IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JONATHAN BERRY, | : |
| Petitioner, | : |
| | : Case No. 2:22-cv-02465 |
| v. | : |
| | : CHIEF JUDGE ALGENON L. MARBLEY |
| MIKE MEINTEL, Warden, | : |
| | : Magistrate Judge Stephanie K. Bowman |
| Respondent. | : |

## OPINION & ORDER

In June 2022, Petitioner Jonathan Berry, a state prisoner proceeding with the assistance of counsel, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (ECF No. 3). Now before this Court are Petitioner's Objections (ECF No. 14) to Magistrate Judge Bowman's Report and Recommendations ("R&R") (ECF No. 12). For the reasons stated below, the Magistrate Judge's R&R (ECF No. 12) is **ADOPTED** with modifications. Accordingly, Petitioner's Objections (ECF No. 14) are **OVERRULED**, and his Petition for Writ of Habeas Corpus (ECF No. 3) is **DISMISSED WITH PREJUDICE**.

### I. BACKGROUND

Petitioner Jonathan Berry is incarcerated at the Correctional Reception Center in Orient, Ohio. (ECF No. 7 at 1). In February 2019, Petitioner was indicted in the Union County Court of Common Pleas on five counts of aggravated trafficking in drugs and one count of involuntary manslaughter for the death of Ashley Russell. (ECF No. 6 at 4-6). Russell and her two children moved in with her parents in Marysville, Ohio after she began struggling with a drug addiction. (*Id.* at 263). She and Berry were friends, and often spent time together. (*Id.*). Russell's mother suspected that Berry and Russell were doing drugs together, and she texted Berry, asking him to

1

stop selling or giving her daughter drugs. (*Id.* at 263-64). Berry insisted that he was not providing her with drugs. (*Id.* at 264).

Meanwhile, the police had received complaints about Berry and engaged a confidential informant ("CI") to participate in controlled-buy operations targeting Berry. (*Id.*). Between April 2017 and June 2017, the CI conducted three controlled buys with Berry, each of which yielded a substance that was later found to contain methamphetamine. (*Id.* at 264-65).

On June 18, 2017, one day before Russell's death, Berry texted Russell: "I got ur Chinese." (*Id.* at 265). Officers testified at trial that "Chinese" is a street name for a compound, usually consisting of heroin and some other drug like fentanyl or methamphetamine. (*Id.*). Russell asked how she could retrieve it from him, and Berry suggested that she get it from him in the morning. (*Id.*).

The next morning, on June 19, 2017, the two agreed to meet in the Home Depot parking lot. (*Id.* at 265-66). Security cameras at Home Depot captured them walking together. (*Id.* at 266). Although Russell's texts indicate that she sought drugs from other sources leading up to her death, her drug-seeking behavior stopped after her morning meeting with Berry outside Home Depot. (*Id.* at 280). Later that afternoon, Russell's aunt, Lisa Crumb stopped by Russell's residence to borrow a hairdryer and Russell told Crumb that she had met Berry that morning at Home Depot. (*Id.* at 266-67).

A few hours later, another of Russell's aunts, Gayla Wooldridge, was visiting Russell's grandparents at their home down the street when Russell's young son came to Russell's grandparents' house to report that he thought something was wrong with his mother. (*Id.* at 267). Woolridge and another family member arrived at Russell's residence and found the front door open. (*Id.*). They entered and went to the upstairs bathroom, which was locked. (*Id.*). When they

found the key and opened the door, they saw Russell unresponsive on the bathroom floor and turning blue. (*Id.* at 267-68). Wooldridge called 9-1-1 and although the emergency squad attempted to resuscitate her, Russell was declared dead at the hospital. (*Id.* at 268). Later, a postmortem examination of Russell's remains detected fentanyl and "amphetamine/methamphetamine" in her system and determined that her cause of her death appeared to be an accidental overdose through "multiple drug intoxication." (*Id.* at 269).

In the bathroom where Russell was found, police found drug paraphernalia and a small plastic bag of a white powdery substance within another plastic bag, which appeared unopened. (*Id.* at 268-69). When tested, the substance was found to contain fentanyl and ketamine. (*Id.* at 269).

The police conducted one more controlled buy between the CI and Berry, two days after Russell's death. (*Id.* at 269). The substance that the CI returned to police after his interaction with Berry contained methamphetamine. (*Id.*).

A jury convicted Berry of all six counts in January 2020. (*Id.* at 271). Since the trafficking count on the day of Russell's death was the predicate felony offense for Berry's manslaughter conviction, the two merged at sentencing. (*Id.*). Following his convictions, Petitioner appealed to the Ohio Court of Appeals, challenging only the trafficking count related to Russell's death and the involuntary manslaughter count. (*Id.* at 273). In this appeal, Petitioner raised ten issues, the relevant ones of which are listed below:

> (1) The record contained insufficient evidence to support a conviction for aggravated possession of drugs in violation of R.C. 2925.03 and for involuntary manslaughter in violation of R.C. 2903.04.
> (2) The conviction for aggravated possession of drugs in violation of R.C. 2925.03 and for involuntary manslaughter in violation of R.C. 2903.04 was contrary to the manifest weight of the evidence.

3

    (3) The trial court erred when it failed to give any jury instruction regarding causation.

…

    (6) The trial court incorrectly ruled as it pertained to confidential informant's constitutional right against self-incrimination and the subsequent criminal contempt findings prejudiced appellant.

…

    (8) The trial court erred when it allowed family members to be present during the trial prior to their testimony being given in violation of any separation of witnesses.
    (9) Appellant was denied his constitutional right to the effective assistance of counsel.

(*Id.* at 271-73). The Court of Appeals affirmed the judgment of the trial court and rejected all ten of Petitioner's assignments of error. (*Id.* at 263).

Petitioner then appealed to the Ohio Supreme Court, raising only five propositions of law in his memorandum in support of jurisdiction:

    (1) It is against the sufficiency and manifest weight of the evidence to find a defendant guilty of aggravated possession of methamphetamine when the only evidence of such trafficking was text messages using the general term of "Chinese" and the drugs recovered from the scene did not contain methamphetamine.
    (2) It is against the sufficiency and manifest weight of the evidence to find a defendant guilty of involuntary manslaughter when the predicate felony offense of aggravated possession of methamphetamine has not been established.
    (3) A defendant is denied a right to a fair trial on the charge of involuntary manslaughter when the only jury instruction given on said charge was "proximate result."
    (4) The Third Appellate District's Decision in *State v. Berry*, 2021-Ohio-1132, is in conflict with the Fifth Appellate District's Decisions in *State v. Kosto*, 2018-Ohio-1925.
    (5) A defendant is denied a right to a fair trial when a violation of the separation of witnesses has occurred because multiple family members that testified attended the jury trial and were present during the testimony of witnesses.

(*Id.* at 339). The Ohio Supreme Court declined to exercise jurisdiction. (*Id.* at 445)

Petitioner then filed the instant Petition for Writ of Habeas Corpus ("Petition") pursuant to

4

28 U.S.C. § 2254. (ECF No. 3). In his form Petition, apparently authored by or with his attorney, Petitioner identifies four general grounds on which he seeks habeas relief, the second of which has two subparts: (1) insufficient evidence; (2)(a) witness separation; (2)(b) Confrontation Clause rights with regard to the CI; (3) ineffective assistance of counsel; and (4) violation of due process by inadequate jury instructions.[1] (*See id.* at 5-10).

The Magistrate Judge considered the grounds that Petitioner raised and recommended that the Petition be dismissed with prejudice, that Petitioner be denied a certificate of appealability, and that this Court certify to the Sixth Circuit that any appeal would not be taken in "good faith" and should not be permitted to proceed *in forma pauperis*. (ECF No. 12). Petitioner filed an objection to the Magistrate Judge's R&R (ECF No. 14), asserting that the Magistrate Judge's conclusions that Petitioner defaulted on Grounds 2A, 2B, 3, and 4 were inaccurate, and that the Magistrate Judge's conclusion on the merits of Ground 1 was incorrect. Petitioner's *habeas* petition is now ripe for this Court's consideration.

## II. STANDARD OF REVIEW

When a party objects to a magistrate judge's report and recommendation, the "judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(c). After this review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

---

[1] As part of Ground Four, Petitioner also mentions: (1) inadequacy of expert testimony and a (2) a sentencing issue, the first of which is addressed by Ground 1 and the second of which he makes no arguments about.

5

### III. LAW AND ANALYSIS

#### A. Procedural Default

Respondent alleges, and the Magistrate Judge concluded, that many of Petitioner's grounds for relief are procedurally defaulted. (ECF No. 7 at 17-37). This Court will address those allegations first, before turning to the parties' contentions on the merits.

Individuals like Petitioner, who are convicted of an Ohio criminal offense may challenge their convictions in multiple ways in state court. In fact, "[i]n recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is *required* to present those claims to the state courts for consideration" before bringing a petition for federal *habeas corpus* to this Court. *Twyford v. Bradshaw*, 2017 WL 4280955, at *16 (S.D. Ohio Sept. 27, 2017) (emphasis added) (citing 28 U.S.C. § 2254(b), (c)). If a defendant fails to do so and can no longer present his claims to the state courts—in other words, he has procedurally defaulted on the claims—he has also waived those claims for purposes of federal *habeas corpus* review. *Id.*

Procedural default analysis is performed on a claim-by-claim basis, and there are several junctures at which a defendant may procedurally default on a claim. During trial, counsel must lodge a contemporaneous objection to preserve an issue for review under any standard but "plain error." *See e.g., Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011) (discussing Ohio's contemporaneous objection rule). In Ohio, claims that appear on the face of the trial record must be raised on direct appeal, or they will be waived under Ohio's doctrine of *res judicata*. *State v. Perry*, 10 Ohio St. 2d 175 (1967). A petitioner must also present those claims to the state's highest court, in order to exhaust his state remedies. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999).

Additionally, in order to preserve claims on either level of appeal, a petitioner must fairly present both the factual and legal underpinnings of each of his federal claims to the state courts. *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006). It is true that "a petitioner need not recite 'book and verse on the federal constitution,'" *id.*, but that does not absolve him of making legal arguments in his *habeas* petition under the federal law or constitutional amendment that he urges was violated.

If a petitioner has procedurally defaulted, this Court is barred from reaching the defaulted claims unless Petitioner can show either: (1) cause for the procedural default and prejudice from the alleged constitutional error; or (2) that failure to consider the claims will result in a "fundamental miscarriage of justice," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), because of Petitioner's "actual innocence of the substantive offense," *Dretke v. Haley*, 541 U.S. 386, 387 (2004) (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986)). To show "cause," Petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," or that Petitioner's counsel was ineffective under *Strickland v. Washington*, 466 U.S. 687 (1984). *Coleman*, 501 U.S. at 753. A petitioner can show "prejudice" if he can show that he "might not have been convicted" but for the constitutional error. *Reed v. Ross*, 468 U.S. 1, 12 (1984). The "actual innocence" exception is a notoriously narrow one that requires new evidence of innocence. *See Sawyer v. Whitley*, 505 U.S. 333, 340 (1992).

This Court will move chronologically through the junctures at which Petitioner's counsel caused Petitioner to default procedurally on the bulk of his claims, before turning to analyze the surviving claim on the merits.

### 1. Failure to object at trial

Two of Petitioner's claims, Grounds 2A (witness separation) and 4 (due process violation by improper jury instruction) of his Petition, are procedurally defaulted because Petitioner's

7

counsel failed to object to the alleged errors at trial. Where "the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule," such as the contemporaneous objection rule, this Court "must undertake a four-part analysis." *Twyford*, 2017 WL 4280955, at *16 (citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986)). This Court must first determine whether "there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, this Court must decide that the state courts actually enforced the state procedural sanction. *Id.* Third, this Court must determine if the state procedural rule is an "adequate and independent state ground" such that the state can "foreclose review of a federal constitutional claim." *Id.* Fourth, if all these preconditions are met, this Court cannot reach the merits of the claim unless the petitioner can demonstrate either: (1) cause for the procedural default and prejudice from the alleged constitutional error, *id.*; or (2) "actual innocence," *House v. Bell*, 547 U.S. 518, 537 (2006).

As the Magistrate Judge's R&R explained (ECF No. 12 at 16-17), Petitioner's trial counsel failed to comply with Ohio's contemporaneous objection rule, which "is a firmly established procedural rule that is an adequate and independent state ground to foreclose federal relief." *Goodwin*, 632 F.3d at 315. The intermediate appellate court enforced the state procedural rule by applying "plain error" review to these claims. *See Williams v. Bagley*, 380 F.3d 932, 968-69 (6th Cir. 2004) (holding that the application of "plain error" review "constitutes enforcement of Ohio's contemporaneous objection rule."); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000) ("Plain error review by a state appellate court does not open a claim to consideration on federal habeas when the state court rests its decision on a procedural bar."). Three parts of the four-part analysis are satisfied.

The fourth part, however, requires closer examination. The Magistrate Judge concluded

that Petitioner did not even attempt to raise a "cause and prejudice" argument in his briefing. (ECF No. 12 at 17). And in Petitioner's Objections to the Magistrate Judge's R&R, he does not present a particularly clear "cause and prejudice" argument to excuse trial counsel's default on Grounds 2A and 4. (ECF No. 14 at 6-7).[2] This Court is of the view, however, that Petitioner does gesture vaguely to his arguments about ineffective assistance of trial counsel as a "cause" for his default. (See ECF No. 9 at 15; ECF No. 14 at 12). As a result, this Court will consider whether Petitioner's ineffective assistance arguments amount to "cause." Ineffective assistance of counsel may constitute "cause" only if counsel's performance was deficient under the wide professional latitude permitted by *Strickland* and shown to have prejudiced petitioner. *Murray*, 477 U.S., at 487.

With respect to Ground 2A (witness separation), even if this Court were to assume that trial counsel's performance was deficient, he cannot show prejudice. Petitioner has made no showing as to how trial counsel's failure to object to the presence of the victim's parents in the courtroom prior to their testimony prejudiced him. As the state appellate court noted in its plain

---

[2] Instead, Petitioner spends much of his brief addressing the Magistrate Judge's conclusion that Grounds 2A is doubly defaulted because Petitioner did not raise them as federal claims on direct appeal. (ECF No. 14 at 5-14). Although not necessarily for the resolution of this case, this Court agrees with the Magistrate Judge's conclusion that Petitioner compounded his default on the "witness separation" claim because it was not "fairly presented" as a federal claim to the state court. Although counsel raised the factual predicate—the presence of the victim's family—in the direct appeal brief, counsel raised it exclusively as an issue of state law, not federal law. (ECF No. 12 at 14). As discussed above, failure to present a state court with the federal legal basis for a claim constitutes procedural default. *Gray v. Netherland*, 518 U.S. 152, 162 (1996).

Petitioner strenuously objects to the Magistrate Judge's conclusion, suggesting that he "fairly presented" his argument under Ohio's "Marsy's Law" as a constitutional claim because he cited Ohio Evidence Rule 615, which is comparable to Federal Rule of Evidence 615, in that they both require the separation of witnesses, and that the violation of Rule 615 is also somehow a violation of the Confrontation Clause. (ECF No. 14 at 7). Since Petitioner presents no new, more cogent arguments in his Objections, this Court adopts the Magistrate Judge's conclusion that "a claim in state court based on a state evidentiary rule is insufficient to apprize the state court of the constitutional nature of the claim." (ECF No. 12 at 14) (citing *Jamison v. Collins*, 100 F. Supp. 2d 521, 580 (S.D. Ohio 1998).

error review of the claim, Russell's parents "largely provided background information about [Russell's] addiction and her relationship with Berry over the past several years." (ECF No. 6 at 320). They did not, however, "generally provide testimony that tended to establish essential elements of the charges against Berry." (*Id.*)

With respect to Ground 4 (improper jury instructions), Petitioner has failed to show "cause" because Petitioner has not—and cannot—show that trial counsel's performance was deficient. In fact, Petitioner has failed to establish that the trial court or counsel made any error whatsoever with respect to the jury instructions. In his brief on direct appeal to the intermediate appellate court, Petitioner suggested that the trial court ought to have given a "*Burrage* instruction" regarding but-for causation under *Burrage v. United States*, 571 U.S. 204 (2014). (*Id.* at 154). A few months after Petitioner lodged this argument, however, the Supreme Court of Ohio clarified that because *Burrage* interpreted "the meaning of a specific federal statute, and it does not establish any constitutional rule applicable to the states…*Burrage* is persuasive authority only" on the meaning of but-for causation. *State v. Price*, 2020-Ohio-4926, 162 Ohio St. 3d 609. Therefore, as the Ohio Court of Appeals concluded, "Berry has not carried the burden of establishing that the trial court committed an error" with respect to the jury instructions. (ECF No. 6 at 299). It follows that trial counsel also cannot have made such an error in failing to propose alternative instructions. Petitioner presents this Court with no cogent reason to conclude otherwise.

As a result, this court is barred from reaching the merits of Grounds 2A (witness separation) and 4 (improper jury instructions).

### 2. Failure to exhaust at the Ohio Supreme Court

This Court turns now to Petitioner's Grounds 2B and 3, which were raised on direct appeal to the intermediate appellate court, but were not exhausted on appeal to the Ohio Supreme Court.

As mentioned above, for this Court to reach a claim on federal *habeas*, a petitioner must have raised it both to the intermediate state appellate court and the Ohio Supreme Court. *O'Sullivan*, 526 U.S. at 844-45. Raising it to the intermediate state appellate court alone does not suffice. *Id.* As the Supreme Court has explained, the purpose of exhaustion "is not to create a procedural hurdle on the path to federal *habeas* court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." *Keeney v. Tomayo-Reyes*, 504 U.S. 1, 8-10 (1992).

In Ground 2B, Petitioner argues that he was denied the right to confront the state's CI because the CI invoked his Fifth Amendment right against self-incrimination during direct examination, halting the testimony before Petitioner's counsel had an opportunity to cross-examine him. (ECF No. 3 at 7). Despite the trial court and government's assurances to the CI that he would enjoy immunity, he continued to invoke his Fifth Amendment rights and was arrested for contempt of court. (ECF No. 10 at 1059-70). In Ground 3, Petitioner alleges that his trial counsel was ineffective for failing to: cross-examine the CI, request a jury instruction on causation, hire expert witnesses, adequately respond to the state's motions, object to the presence of the victim's family in court, prepare and file a sentencing memorandum, and file a motion to sever the counts into two separate trials. (ECF No. 3 at 8, 16).

The Magistrate Judge concluded that "[t]he record reflects that the second part of Ground Two and Ground Three were not raised by Petitioner in his direct appeal brief to the Ohio Supreme Court." (ECF No. 12 at 16). Petitioner insists that he did in fact raise his Confrontation Clause and ineffective assistance of counsel claims in his Memorandum in Support of Jurisdiction before the Ohio Supreme Court. (*See e.g.,* ECF No. 14 at 8-9). But he did not. It is not incumbent on the state court—or any court—to piece together a constitutional argument from passing references

11

or intimations. That is counsel's responsibility. In this respect, Petitioner's appellate counsel failed him. This Court has reviewed Petitioner's brief to the Ohio Supreme Court in its entirety and finds no mention of the CI's trial testimony or the performance of Petitioner's trial counsel. The fact that the Ohio Supreme Court has a page limit for memoranda does not alter Petitioner's obligation to give the court an opportunity to pass on his federal claims. (*See* ECF No. 14 at 9-10). Nor does the Magistrate Judge's failure to reach the merits of Petitioner's claims in Grounds 2B and 3 "evidence[] disregard of Petitioner's allegations," as he suggests. (ECF No. 14 at 4). It instead reflects the fact that this Court is barred from reaching the merits of these claims because of Petitioner's counsel's failure to exhaust them.

### *3. Manifest injustice*

Having concluded that Petitioner procedurally defaulted on Grounds 2A, 2B, 3, and 4, and has not shown "cause and prejudice" to overcome those defaults, this Court turns to the remaining possibility that Petitioner raises: that he is actually innocent and, therefore, it would be a miscarriage of justice not to reach the merits of his claims. (ECF No. 14 at 13). Petitioner has not established that a fundamental miscarriage of justice has occurred.

Proof of "actual innocence" can provide a gateway for otherwise procedurally defaulted constitutional claims to be heard on habeas. *House*, 547 U.S. at 537. The showing required, however, is a stringent one. *Id.* at 522. In this context, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). Petitioner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Id.* at 536-57 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Because Petitioner presents this Court with no new evidence of innocence, he cannot excuse his default through the narrow "actual innocence"

gateway.

### B. Merits

This Court now turns to the merits of Ground 1 of the Petition, in which Petitioner argues that his involuntary manslaughter conviction, and the predicate conviction, aggravated trafficking in drugs (methamphetamine) were not supported by sufficient evidence. (ECF No. 3 at 5, 16). Section 2254, under which Petitioner brings the instant Petition, explains that:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In evaluating the merits of a claim challenging sufficiency of the evidence on *habeas*, this Court is "bound by two layers of deference to groups who might view facts differently than [this Court] would." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009); *see also Coleman v. Johnson*, 566 U.S. 650, 651 (2012). First, this Court must defer to the trier of fact and consider "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This Court must also "defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205 (emphasis in original).

In light of this double-layered deference, the Magistrate Judge concluded that "the Ohio Court of Appeals' sufficiency determination is neither contrary to nor an unreasonable application of *Jackson*." (ECF No. 12 at 23). In his Objections, Petitioner largely recycles his substantive

13

arguments pressed before, and then claims in conclusory fashion that the Ohio Court of Appeals' decision is contrary to and an unreasonable application of the law. (ECF No. 14 at 22).

Specifically, Petitioner spends a substantial portion of his Objections challenging the reliability of the controlled buys that took place between Petitioner and the CI. (ECF No. 14 at 18-20). Since neither the Magistrate Judge, nor the Ohio Court of Appeals relied on those controlled buys in their analyses, Petitioner's arguments are inapposite. (*See* ECF No. 12 at 19-24; ECF No. 6 at 273-93). Petitioner then turns his primary sufficiency argument, which is—as best this Court can tell—that because the drugs found near Russell's body contained fentanyl and ketamine, not methamphetamine, there was insufficient evidence to convict Petitioner of aggravated trafficking in methamphetamine, the requisite predicate offense for his involuntary manslaughter conviction. (ECF No. 14 at 20-22). As a result, Petitioner argues, his involuntary manslaughter conviction is undermined as well. (*Id.* at 22). The key fact that Petitioner fails to acknowledge, however, is that the toxicology report produced after Russell's death showed that her bloodstream contained methamphetamine. (ECF No. 6 at 269). No matter how strenuously Petitioner asserts otherwise, the fact that the drugs found, seemingly unopened, near Russell's body did not contain methamphetamine, does not preclude the inference that Petitioner sold Russell a substance containing methamphetamine, which was found in her bloodstream after her death.

Proof of Petitioner's aggravated drug trafficking conviction required evidence that Petitioner: (1) knowingly; (2) sold or offered to sell; (3) a controlled substance or a controlled substance analog. Ohio Rev. Code 2925.03(A)(I), (C)(1)(a). The Court of Appeals detailed at great length the evidence it considered sufficient to support Petitioner's conviction. (ECF No. 6 at 273-85). This Court will summarize the same.

14

Petitioner and Russell exchanged text messages on June 18, 2017, and June 19, 2017, arranging a drug transaction, during which Petitioner sent Russell a text saying, "I got ur Chinese." (ECF No. 6 at 275; ECF No. 10 at 1101, 1103-1116).  Detective McDowell and Corporal Stone testified that "Chinese" is drug slang to describe fentanyl mixed with heroin or methamphetamine. (ECF No. 6 at 275-76; ECF No. 10 at 1063-64, 1101).  Corporal Stone testified that the additives to fentanyl to make "Chinese" "'could be Methamphetamine, Cocaine, Ketamine' and noted that [Russell] died from 'intoxication of Fentanyl and Methamphetamine and Amphetamine.'"  (ECF No. 6 at 276; ECF No. 10 at 1064-65).  Later that day, Russell and Petitioner exchanged more texts during which Russell learned that Petitioner's girlfriend was nodding off at dinner, apparently intoxicated. (ECF No. 6 at 276-77, ECF No. 10 at 1103-04). Petitioner assures Russell that the drugs were meant for her, but his girlfriend saw them. (ECF No. 6 at 276-77; ECF No. 10 at 1103). Petitioner and Russell also discussed payment for the drugs, where Petitioner set the price as "two tens and a thong."  (ECF No. 6 at 277; ECF No. 10 at 1105). Corporal Stone testified that it was not uncommon in drug transactions for payment to be made with services or photos of body parts. (ECF No. 6 at 278; ECF No. 10 at 1105-06). The next morning, at 7:40 A.M., Petitioner and Russell discussed a plan to meet shortly at Home Depot.  (ECF No. 6 at 280; ECF No. 10 at 1114-16). Security footage from the Home Depot and testimony from Russell's aunt, Lisa Crum, confirmed that Russell met Petitioner at the Home Depot that morning. (ECF No. 6 at 281; ECF No. 10 at 940, 1072-74).  Detective McDowell testified that after Russell's death, he interviewed Petitioner, who admitted that he had a source for "Chinese" named Dutch, who sold it to him for $20.  (ECF No. 6 at 282; ECF No. 10 at 990-91).  Lastly, crime lab technician Jennifer Watson testified that the substance in the seemingly unopened bag found at the scene of Russell's overdose included fentanyl and ketamine.  (ECF No. 6 at 282; ECF No. 10 709-10).  The Ohio Court of

Appeals then concluded that, viewing the evidence in the light most favorable to the prosecution, the State presented evidence to support of each element of the offense. (ECF No. 6 at 282-83).

The Ohio Court of Appeals then detailed the evidence that it deemed sufficient to support Petitioner's involuntary manslaughter conviction, which is proved by evidence that the defendant: (1) caused the death of another; (2) as a proximate result; (3) of the offender's committing a felony. Ohio Rev. Code 2903.04(A). The Ohio Court of Appeals concluded at the outset that the third element was met because there was sufficient evidence to sustain the conviction for aggravated drug trafficking. (ECF No. 6 at 283). The court then turned to the evidence presented at trial in support of the first and second prongs. The chief toxicologist at the Montgomery County Coroner's Office testified that fentanyl and methamphetamine were found in Russell's system. (ECF No. 6 at 284; ECF No. 785). Similarly, the forensic pathologist who performed Russell's autopsy, testified that Russell died from an accidental overdose from multiple drug intoxication with fentanyl and amphetamine/methamphetamine, and the Union County Coroner, Dr. David Applegate, testified that the official cause of death was accidental overdose. (ECF No. 6 at 284; ECF No. 10 at 810-811, 876-77). Corporal Stone testified that an unused bag of drugs and drug paraphernalia were found within the proximity of Ashley Russell's body at the overdose scene. (ECF No. 6 at 284-85; ECF No. 10 at 1041-42, 1056, 1145-46). The court then concluded that a rational trier of fact could have concluded that Berry committed the offense of involuntary manslaughter since the State produced some evidence for each element of the charged offense. (ECF No. 6 at 285).

In light of the foregoing, this Court concludes that the Ohio Court of Appeals reasonably applied the *Jackson* standard and rejected Petitioner's claims based on a reasonable determination of the facts in light of the evidence presented at trial.

## IV. CONCLUSION

Having considered Petitioner's grounds for relief and his objections to the Magistrate Judge's R&R, this Court finds they are without merit. Accordingly, the Magistrate Judge's R&R (ECF No. 12) is hereby **ADOPTED** with modifications, Petitioner's Objections (ECF No. 14) are **OVERRULED**, and Petitioner's Petition for Writ of Habeas Corpus (ECF No. 3) is **DISMISSED WITH PREJUDICE**. Furthermore, because reasonable jurists would not disagree with this conclusion, this Court **DECLINES** to issue a certificate of appealability and **CERTIFIES** to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed.

**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED:  November 29, 2023**